Filed 8/26/25  P. v. Lopez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C100413 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF22-2602) |
| v. | |
| URIEL SOLORIO LOPEZ, | |
| Defendant and Appellant. | |

A jury found defendant Uriel Solorio Lopez guilty of numerous sexual offenses against two underage victims.  On appeal, he argues the trial court incorrectly instructed the jury on the definition of masturbation.  Because we conclude, beyond a reasonable doubt, that any instructional error did not contribute to the verdict, we affirm the judgment.  We direct the trial court to correct the abstract of judgment and sentencing minute orders, as detailed below.

1

## FACTS AND PROCEEDINGS

In 2023, the People charged defendant with sexual intercourse or sodomy with N.S.L., a child 10 years old or younger (Pen. Code, § 288.7, subd. (a); count 1);[1] lewd act upon N.S.L., a child under 14 years of age (§ 288, subd. (a); count 2); continuous sexual abuse of N.S.L., a child under 14 years of age (§ 288.5, subd. (a); count 3); lewd act upon Y.A.S.R., a child under 14 years of age (§ 288, subd. (a); count 4); and two counts of lewd act upon Y.A.S.R., a child who was 14 or 15 years old and at least 10 years younger than defendant (§ 288, subd. (c)(1); counts 5 and 6).  As to count 3, the People alleged that:  (1) the abuse occurred between July 9, 2021, and November 9, 2022; and (2) defendant had substantial sexual conduct with the victim.  (§ 1203.066, subd. (a)(8).)  The People further alleged as to several counts that defendant committed a violation of section 288, subdivision (a) against more than one victim, both under 14 years of age.  (§ 667.61, subds. (e)(4), (j)(2).)  The People also alleged several aggravating circumstances.

*Trial Evidence*

At trial, N.S.L. testified as to numerous incidents between her and defendant.

<u>Incident No. 1</u>

When N.S.L. was nine years old, she was sitting on the couch with defendant, who was drunk.  He pulled down his shorts and underwear, grabbed N.S.L.'s hand, and made her touch his "dick" (penis).

<u>Incident No. 2</u>

When N.S.L. was 10 years old, defendant was again drunk and behaving aggressively.  He told N.S.L. to bend over the armrest of the couch; once she did so, defendant pulled down her pants and underwear.  N.S.L. felt defendant's penis touch her

---

[1] Undesignated statutory references are to the Penal Code.

"butt" (buttocks). She testified she felt his penis in her buttocks, but only "a little bit." N.S.L. said she did not feel any pain as "[i]t didn't get, like, real through." The incident ended after they were interrupted.

Incident No. 3

When N.S.L. was 10 years old, defendant and N.S.L. were sitting next to each other on a sofa. They were covered with a blanket. Under the blanket, defendant put his hand over N.S.L.'s pants and touched her vagina "up and down." Defendant held her down to prevent her from running. Then defendant moved his hand under N.S.L.'s pants and underwear and was touching her vagina "at first from the outside, then from the inside." N.S.L. got up and went to the bathroom at this point.

Incident No. 4

When N.S.L. was 11 years old, she was sitting on the sofa with defendant and he touched her vagina "from the top" and then went under her pants and underwear. She testified that he "put his finger a little bit in, like the hole that is there in the vagina." Defendant then asked her "How does it feel like? Do you like it?" He then touched her chest under her shirt and said, "They're big."

Incident No. 5

When N.S.L. was 11 years old, defendant started tickling N.S.L. and then touched her vagina over her pants and underwear. He then put his hands down her pants and "just like went down and then up" for about five seconds. N.S.L. tried to close her legs but she could not. N.S.L. then scratched defendant with her nails and he stopped.

Incident No. 6

When N.S.L. was 11 years old, she was sitting on a sofa with a blanket over her. Defendant was sitting next to her and pulled the blanket to cover himself too. Defendant proceeded to touch N.S.L.'s vagina over her pants and then under her pants and underwear. N.S.L. testified defendant "was touching inside my vagina" with his hand and that he did that "[f]or a little bit."

3

Incident No. 7

When N.S.L. was 12 years old, she was lying on her stomach in a bed when defendant lay down, touched her thigh, and then moved his hand to her buttocks and squeezed them.

Incident No. 8

When N.S.L. was 12 years old, she was chopping onions when defendant put his hand on the back of her head, went down to the middle of her thighs, then moved his hand up to her buttocks along the outside of her leg. She moved away with the knife in her hand. He said "don't cut me" in a joking way, which made her think defendant thought she liked what he was doing to her.

On cross-examination, when asked how she knew defendant was drunk in some of the incidents detailed, N.S.L. said she saw him drink "a pack of beer of 24 or 18." N.S.L. was also asked if she remembered telling police, as to Incident No. 2, that defendant's penis went "through and through" and not just "in a little bit." N.S.L. said yes, she told police what had happened, but that she "never said that it penetrated me all of the way," only that it "it went in a little bit."

A detective testified that when she interviewed defendant, he denied ever touching N.S.L.'s breast or vagina. Defendant admitted to the detective to touching N.S.L.'s buttocks but said he did so in a playful manner.

Defendant testified that none of what N.S.L. described in her testimony had happened. He added that although they would "play," it was never his intention to touch N.S.L.'s buttocks "in a bad way."

*Jury Instructions*

As to count 3, the trial court verbally instructed the jury in relevant part as follows:

"The defendant is charged in Count 3 with continuous abuse of a child under the age of 14 years in violation of Penal Code Section 288.5(a). To prove that the defendant is guilty of this crime, the People must proof [*sic*] that:

4

"One, the defendant lived in the same house with or had recurring access to a minor child;

"Two, the defendant engaged in three or more acts of substantial sexual conduct or lewd and lascivious conduct with the child;

"Three, three or more months passed between the first and last acts;

"And, four, the child was under the age of 14 years at the time of the acts.

"Substantial sexual conduct means oral copulation or masturbation of either the child or the perpetrator, or penetration of the child's vagina or rectum by the other person's penis.

"Lewd or lascivious is any willful touching of a child accomplished with the intent to sexually arouse the perpetrator or the child. Contact with the child's bare skin or private parts is not required. Any part of the child's body or the clothes the child is wearing may be touched. Lewd or lascivious conduct also includes causing a child to touch his or her own body or someone else's body at the instigation of a perpetrator who has the required intent.

[¶] . . . [¶]

"If you find the defendant guilty of the crime charged in Count 3, you must then decide whether the People have proved the additional allegation that the defendant engaged in substantial sexual conduct while committing the acts or act substantiating Count 3.

"To prove this allegation, the People must prove that:

"One, the defendant engaged in oral copulation or masturbation of either the child or the perpetrator, or penetration of the child's or perpetrator's vagina or rectum by the defendant's penis;

"And, two, the child was under the age of 14 years at the time of the acts.

"Oral copulation is any contact, no matter how slight, between the mouth of one person and the sexual organ or anus of another person. Penetration is not required.

5

"Masturbation means any conduct [*sic*], no matter how slight, of the sexual organ of the victim or the defendant."**2**

*Closing Argument*

In summation, the People explained that Incident No. 1 was "not related to any of the specific counts the defendant is charged with, but . . . if you believe that more likely than not that that happened, you can use that instance to inform your decision on whether or not the defendant has a propensity to commit sexual offenses."

The People also explained their view that: (1) Incident No. 2 related to the sodomy charge (count 1); (2) Incident No. 3 related to the lewd act charge as to N.S.L. (count 2); and (3) all the other incidents starting from when N.S.L. was 10 years old, except for Incident No. 3, related to the continuous sexual abuse charge (count 3).

As to count 3, the People argued "there's substantial sexual conduct and there is [*sic*] lewd and lascivious acts. . . . [E]ven if you don't think that any of these specific types of activities happened that is defined in substantial sexual conduct, if you believe that there were at least three instances of touching for a sexual purpose, that still fulfills Count 3. [¶] But in this case, we do have an instance of masturbation and penetration of N.S.L.'s vagina. As you heard, there was one instance on the couch where the defendant put his finger inside of her vagina. That counts as penetration. There was also another instance—even if there is no penetration, any touching of her vagina by him counts as masturbation under the definition. . . . We have a number of instances of masturbation,

---

**2** The written instructions provided to the jury define masturbation as "any *contact*, no matter how slight, of the sexual organ of the victim or the defendant." (Italics added.) The parties effectively agree that the written version of this definition is the one that was intended to be given to the jury. Defendant does not claim that any misreading of the instruction by the trial court impacted the verdict.

including an act of penetration. So we have acts of substantial sexual conduct as well as lewd and lascivious acts."[3]

In his closing, defense counsel cast doubt on the credibility of the witnesses, including N.S.L. At one point defense counsel said, "According to N.S.L., [defendant] was drunk all of the time. He drank 18 to 24 beers. Is that reasonable? Is that credible? [¶] . . . Is that reliable and credible evidence? [¶] Same witness told you that she was bent over at a 90-degree angle . . . and that she was penetrated. The day when she testified it was a little bit, but before it was through." Defense counsel also argued that N.S.L. "had body language that was closed and tight. [¶] What does that tell you? What was the witness's behavior while testifying? How reasonable is this testimony when you consider all of the evidence in this case? Being bent over and being penetrated a little bit, yet there's absolutely no findings of any sort."

*Verdicts and Sentencing*

The jury asked a question during its deliberations about the degree of penetration required to be proven as to the sodomy charge, and later was unable to reach a verdict on that charge. The jury found defendant guilty of the remaining offenses and found true the substantial sexual conduct allegation, the multiple victim allegation, and most of the alleged aggravating circumstances.

---

[3] The prosecutor's argument that all the other incidents starting from when N.S.L. was 10 years old, except for Incident No. 3, related to the continuous sexual abuse charge technically includes Incident No. 2, in addition to Incident Nos. 4 through 8. We agree with defendant's view that the prosecutor only intended to rely on Incident Nos. 4 through 8 for count 3. Incident No. 2 occurred well outside the timeframe alleged for count 3; further, under section 288.5, subdivision (c), the People arguably cannot rely on an act that forms the basis of another sex offense to prove one of the three acts needed for continuous sexual abuse unless the People have charged the offenses in the alternative (which they did not do here). (See *People v. Rojas* (2015) 237 Cal.App.4th 1298, 1308; *People v. Johnson* (2002) 28 Cal.4th 240, 248.)

The trial court sentenced defendant to an aggregate term of three years eight months plus 50 years to life imprisonment.

Defendant timely appealed.

## DISCUSSION

### I

### *Instructional Error*

Defendant argues the trial court incorrectly instructed the jury on the definition of masturbation, and that this instructional error contributed to the jury's guilty verdict on the continuous sexual abuse offense and its true finding of the substantial sexual conduct allegation.

The offense of continuous sexual abuse of a child occurs when "[a]ny person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense." (§ 288.5, subd. (a).)

The statutory text of this offense "gives prosecutors three ways of proving continuous sexual abuse:  by proof of 'substantial sexual conduct'; by proof of 'lewd and lascivious conduct'; or by both." (*People v. Canales* (2024) 106 Cal.App.5th 1230, 1244 (*Canales*).)  The jury "need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number." (§ 288.5, subd. (b).)

"Lewd and lascivious acts" means any touching of a child under the age of 14 years with the intent to sexually arouse either the defendant or the child. (*People v. Martinez* (1995) 11 Cal.4th 434, 442; § 288.)  Nothing in the statutory language "restricts the manner in which such contact can occur or requires that specific or intimate body

8

parts be touched. Rather, a touching of 'any part' of the victim's body is specifically prohibited." (*Martinez*, at p. 442; see *id.* at p. 444 ["[C]ourts have long indicated that section 288 prohibits *all* forms of sexually motivated contact with an underage child. Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act"].)

" 'Substantial sexual conduct' means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or *masturbation* of either the victim or the offender." (§ 1203.066, subd. (b), italics added.) A finger is a "*foreign object*" within the meaning of this statute. (*Canales*, *supra*, 106 Cal.App.5th at p. 1244.)

Here, as we have set forth *ante*, the trial court defined masturbation as it related to the substantial sexual contact charge to mean any contact, no matter how slight, to the sexual organs of the victim or the defendant. Defendant acknowledges that this definition of masturbation was originally formulated by *People v. Chambless* (1999) 74 Cal.App.4th 773. But he contends the definition is wrong because it is at odds with the ordinary meaning of masturbation and cannot be reconciled with other parts of the statute.

In response, the People argue defendant has forfeited this argument by failing to raise it below. We disagree. (See *People v. Vega* (2015) 236 Cal.App.4th 484, 495 ["Generally, failure to object does not waive an instructional error on appeal if the instruction was an incorrect statement of law or the defendant's substantial rights were affected"].) Nonetheless, we need not reach the claim of error because we conclude defendant's claim fails for lack of prejudice.

The parties agree the *Chapman* federal harmless error standard applies here. (See *Chapman v. California* (1967) 386 U.S. 18.) In the context of instructional error, that standard "requires reversal of the judgment unless the reviewing court concludes beyond a reasonable doubt that the error did not contribute to the verdict." (*People v. Chun*

9

(2009) 45 Cal.4th 1172, 1201; see also *People v. Aledamat* (2019) 8 Cal.5th 1, 12.) " 'To say that an error did not "contribute" to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous. " 'To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.' " (*People v. Harris* (1994) 9 Cal.4th 407, 425-426, italics omitted.) Stated another way, the applicable test is: " ' "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" ' " (*In re Lopez* (2023) 14 Cal.5th 562, 581.)

This standard is met here. At trial, the People relied on Incident Nos. 4 through 8 to establish the three acts necessary to prove continuous sexual abuse. As discussed, a prosecutor can prove this offense by establishing either three acts of "lewd and lascivious conduct" or three acts of "substantial sexual conduct." The definition of masturbation is only relevant to the latter type of acts, as the statutory definition of "lewd and lascivious conduct" does not include or otherwise rely on the word masturbation. We are persuaded, beyond a reasonable doubt, the jury concluded or would have concluded that each incident at issue (Incident Nos. 4 through 8) was an act of lewd and lascivious conduct--that is, that each incident involved a touching with the intent to arouse. Therefore, even if we assume the trial court's definition of masturbation was legally incorrect, this instructional error did not contribute to the guilty verdict for continuous sexual abuse.

We begin by noting that the prosecutor argued the jury could find defendant guilty of this offense based on substantial sexual conduct *or* lewd and lascivious conduct. Therefore, it is not the case--as can occur--that the prosecutor elected to argue only one of the two types of criminal conduct. In fact, the prosecutor said, "even if you don't think that any of these specific types of activities happened that is defined in substantial sexual conduct, if you believe that there were at least three instances of touching for a sexual

10

purpose, that still fulfills Count 3." The prosecutor thus encouraged the jury to consider whether the incidents qualified as lewd and lascivious conduct, even if the jury did not find there were three acts of substantial sexual conduct.

The defense presented at trial was that N.S.L. should not be believed, and that nothing she described had happened. Based on its verdicts, the jury clearly believed N.S.L. and disbelieved defendant. While the jury deadlocked on the sodomy charge, on that count there was conflicting evidence, offered by N.S.L. herself, as to whether penetration legally occurred. Based on N.S.L.'s testimony, a touching occurred in each of the relevant incidents. In Incident Nos. 4 through 6, N.S.L. testified that defendant touched her vagina. In Incident No. 7, N.S.L. testified that defendant touched her thigh and squeezed her buttocks. In Incident No. 8, N.S.L. testified that defendant moved his hand from the middle of her thighs up to her buttocks.

The evidence presented at defendant's trial compels the conclusion by any reasonable jury that reached the verdicts reached here, that defendant's intent was to sexually arouse. For some of the incidents, there is direct evidence of this intent. As one example, in Incident No. 4, defendant asked N.S.L. "How does it feel? Do you like it?" after he put his finger in her vagina and before he touched her chest under her shirt. In other incidents, the intent is readily inferred from the nature of the acts and from the other evidence introduced in this case--including the evidence of contact between defendant's penis and N.S.L.'s buttocks during Incident No. 2.

It also bears mention that the jury separately found defendant guilty of committing a lewd act upon N.S.L. based on Incident No. 3. A required element of this offense is that defendant "committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child." While the facts of Incident No. 3 and the remaining incidents differ, the fact that the jury found defendant had the intent to arouse in one incident supports the conclusion beyond a reasonable doubt that

11

the jury found or would have found defendant had the intent to arouse in the other similar incidents.

To the extent that there was some evidence that any touching of the buttocks by defendant's hands was merely "play," given the jury's actual verdicts and the state of the evidence, this limited evidence does not affect our conclusion in this context. (See *In re Lopez, supra,* 14 Cal.5th at p. 580 ["In other words, if ' "[n]o reasonable jury" ' would have found in favor of the defendant on the missing fact, given the jury's actual verdict and the state of the evidence, the error may be found harmless beyond a reasonable doubt"].)

Finally, defendant never suggested in his defense a morally innocent or ambiguous explanation of his intent for the three incidents involving *vaginal* touching. As one court aptly put it, "[o]nly one reason explains why an adult man, in secret, touches a girl's vagina . . . and does so repeatedly. . . . [The defendant's] *purpose* was to cause sexual arousal. No other mental state fits the facts." (*Canales*, *supra*, 106 Cal.App.5th at p. 1251.) The same holds true in this case. No rational juror who returned these verdicts and considered all the evidence and argument in this case could have concluded otherwise. (See *In re Lopez, supra,* 14 Cal.5th at p. 580.)

Defendant correctly points out that, as to the continuous sexual abuse offense, the jury found true the allegation that defendant engaged in substantial sexual conduct pursuant to section 1203.066, subdivision (a)(8). He argues this finding supports his assertion that the jury necessarily relied on the definition of masturbation that he argues is lacking. But the jury could have found this allegation true based on a single instance of substantial sexual conduct, and Incident No. 4 included evidence of vaginal penetration by defendant's finger. The prosecutor emphasized this point in his summation, noting that "there was one instance on the couch where the defendant put his finger inside of her vagina. That counts as penetration." That alone would have permitted a finding of

substantial sexual conduct under section 1203.066, subdivision (a)(8) without the jury having to rely on the definition of masturbation.

Further, there was evidence of stimulation in Incident Nos. 5 and 6. In Incident No. 5, N.S.L. testified that after defendant put his hands down her pants, he "went down and then up" for about five seconds. In Incident No. 6, N.S.L. testified defendant was touching inside her vagina "[f]or a little bit." We are confident the jury did not view either of these incidents as de minimis touching, such that it would have concluded the acts constituted substantial sexual conduct under the trial court's definition of masturbation but would not have done so under a stricter definition of masturbation.

For these reasons, we conclude that any instructional error was harmless beyond a reasonable doubt and does not warrant reversal.

II

*Abstract of Judgment and Sentencing Minute Order*

Defendant argues the trial court imposed a fine in an unclear manner. At sentencing, the court said it was imposing a "290.3 fine in this matter $300 base fine itemized for $1,200." The abstract of judgment simply lists a total fine of $1,200 under section 290.3. The sentencing minute order provides a bit more information. It states that the $1,200 is comprised of a base fine of $300 under section 290.3 plus "penalty assessments" as listed in the probation officer's report. The probation report, in turn, recommends a $300 fine under section 290.3 as well as the following penalty assessments and surcharges: (1) $300 pursuant to section 1464; (2) $210 pursuant to Government Code section 76000; (3) $30 pursuant to Government Code section 76104.6; (4) $150 pursuant to Government Code section 70372, subdivision (a); (5) $60 pursuant to Government Code section 76000.5; (6) $60 pursuant to section 1465.7; and (7) $90 pursuant to Government Code section 76104.7. These fines and penalty assessments and surcharges total $1,200.

13

Defendant contends the abstract of judgment and minute order do not, but should, provide the breakdown of the statutory bases for the additional $900 in penalty assessments and surcharges.  The People agree, as do we.  We direct the trial court to correct the abstract of judgment and sentencing minute order to separately list the penalties and surcharges comprising the additional $900 amount imposed by the trial court.

## DISPOSITION

The judgment is affirmed.  The trial court is directed to correct the abstract of judgment and sentencing minute order to separately list the statutory basis for each penalty assessment and surcharge imposed and send a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation.


                                                   /s/
                                              Duarte, J.


We concur:


_____/s/_____
Robie, Acting P. J.


_____/s/_____
Renner, J.

14